IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ERIC A. GONZALES,                    §
                                     §
        Plaintiff,                   §
                                     §
vs.                                  §    C.A. NO. C-05-280
                                     §
CITY OF CORPUS CHRISTI,              §
et al,                               §
                                     §
        Defendants.                  §

## ORDER GRANTING IN PART, DENYING IN PART, DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

On this day came on to be considered: (1) the motion for summary judgment by defendants John Escobedo, Christopher Gomez, Carlos Casares, and Brenda Hinojosa (D.E. 56); (2) the motion for summary judgment by defendant Daniel Garza (D.E. 58); and (3) the motion for summary judgment by defendants Nueces County and Sheriff Larry Olivarez (D.E. 60). For the reasons stated below, the Court grants in part, and denies in part, the motions for summary judgment.

## I.   JURISDICTION

The Court has federal question jurisdiction over this law suit pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction to hear plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## II.   BACKGROUND FACTS AND PROCEEDINGS

In this action, plaintiff claims that defendants violated his constitutional rights in a series of incidents that occurred on

June 3, 2004, during plaintiff's arrest and detention.  Plaintiff alleges claims of excessive force and deliberate indifference to his serious medical needs, conspiracy to violate his constitutional rights, claims under the Americans with Disabilities Act (ADA), and tort claims under Texas state law.  He is seeking unspecified actual and exemplary damages.  The following facts are not in dispute:

On June 3, 2004, plaintiff was at an H.E.B. grocery store on Kostoryz Road in Corpus Christi, Texas, attempting to purchase cigarettes.  Pl's Depo., PE Ex. 29 at 13-15.[1]  He eventually purchased the cigarettes at the gas station outside, and as he placed the cigarettes in his pocket, he was accosted by two Corpus Christi Police Officers, Mark Morrow and M. Goce,[2] who had responded to a report of a disturbance at the store.  Id. at 16-18. Officer Morrow ordered plaintiff to place his hands on the car, while Officer Goce patted plaintiff down.  Id.  At some point, the officers employed a use of force and placed plaintiff in handcuffs. Id. at 20.  Plaintiff was charged with resisting a search and resisting arrest.  PE Ex. 5.

Plaintiff was taken by patrol car to the Nueces County Jail. (Pl's Depo., PE Ex. 29 at 23-24.  At the jail, the intake officer

---

[1] "PE" refers to plaintiff's exhibits, filed at D.E. 67.  "DE" refers to defendants' exhibits, filed at D.E. 57.

[2] On September 30, 2005, Officer Goce was dismissed from this lawsuit.  See D.E. 63.

-2-

noted that plaintiff had an injury to his left eye and ADDH.[3]   PE
Ex. 2.  Plaintiff also underwent a mental disability/suicide intake
screening; he was not believed to be a suicide risk.  PE Ex. 4.
Plaintiff was then placed in a holding cell.  Pl's Depo., PE Ex. 29
at 25.

Once in the cell, plaintiff began kicking and hitting the
door.  Pl's Depo., PE Ex. 29 at 41-45.  In addition, plaintiff
picked up the handset to the wall-phone and began hitting the
phone.  Id. at 44.  Two jail officers, Deputy Garza and Deputy
Escobedo, entered plaintiff's cell and a use of force was employed.
Id. at 49-51.  While plaintiff was on the floor, Officer Gomez and
Officer Casares assisted in applying leg irons to plaintiff.  Id.
at 52-53.

Following the use of force, plaintiff was restrained in his
cell and the jail nurse, Irma Cabrera, checked his restraints.
Pl's Depo., PE Ex. 29 at 53.  Plaintiff did not receive medical
attention at that time.  Id. at 58.

Plaintiff remained shackled in his cell for approximately 35
minutes, until Lieutenant Hinojosa entered plaintiff's cell and
asked him if he wanted to see a medic.  Hinojosa Aff't, DE Ex. H at
1.  Plaintiff agreed and he was taken to the infirmary where Nurse
Cabrera took his pulse and blood pressure, and inquired about his
medical history.  PE Ex.6 at 1.  Plaintiff's blood pressure was

---

[3] Attention Deficit Disorder with hyperactivity.

193/105, and he was administered Clonidine and Zestril.  Id.  Nurse Cabrera noted that plaintiff was missing teeth, his eyes were swollen, and he had an abrasion on his nose.  Id.  Nurse Cabrera gave plaintiff an ice pack for his eye.  Id.

At 6:50 p.m., plaintiff blood pressure was 199/97. PE Ex. 6 at 4.  At 2:12 a.m., plaintiff's blood pressure was 184/113.  Id. at 5.

Plaintiff was released from jail on June 4, 2005. Pl's Depo., PE Ex. 29 at 65.

### III.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  In the face of a properly supported motion for summary judgment, a plaintiff "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994).  The non-movant's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts. Willis v. Roche Biomedical Lab., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also

Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").

When the parties have submitted evidence of conflicting facts, however, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis, 61 F.3d at 315. Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party. See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." Byrd v. Roadway Exp., Inc., 687 F.2d 85, 87 (5th Cir. 1982); Aubrey v. School Bd. of Lafayette, 92 F.3d 316, 318 (5th Cir. 1996).

## IV.  DISCUSSION

**A.  Plaintiff's status.**

At the time of the incidents that form the basis of plaintiff's complaints, plaintiff was a pretrial detainee. See Bell v. Wolfish, 441 U.S. 520, 523 (1979) (pretrial detainees are persons who have been charged with a crime but not yet tried on the charge). Pretrial detainees held in jail are protected under the

-5-

Due Process Clause of the Fourteenth Amendment, which provides that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  <u>Bell</u>, 441 U.S. at 535. The standards under which a pretrial detainee's claims are evaluated depends upon whether the claim is classified as a challenge to conditions of confinement or an "episodic act or omission".  <u>Scott v. Moore</u>, 114 F.3d 51, 53 (5th Cir. 1997) (en banc).  A conditions of confinement case is an attack on "general conditions, practices, rules, or restrictions of pretrial confinement."  <u>Id.</u>  In that instance, a constitutional violation exists only if the condition is not reasonably related to a legitimate, non-punitive governmental objective.  <u>Id.</u>  In contrast, where the harm is a particular act or omission by one or more officials, the case is characterized as an "episodic act or omission case" that is reviewed under a subjective deliberate indifference standard.  <u>Id.</u> at 54; <u>see also</u> <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 526 (5th Cir. 1999).

Plaintiff's claims against defendants concern an "episodic act or omission" to which a standard of subjective deliberate indifference applies.

**B.   Claims against individual defendants.**

Plaintiff claims that Deputy Garza, Deputy Escobedo, Officer Gomez, Officer Casares, and Lieutenant Hinojosa used excessive force against him in violation of his Eighth Amendment right to be

free from cruel and unusual punishment.  He also contends that these defendants were deliberately indifferent to his serious medical needs when they placed him in the holding cell without a more thorough evaluation and without regard to his special needs, and that they failed to treat him properly following the use of force.  Defendants argue that they are entitled to qualified immunity on plaintiff's claims against them in their individual capacities, and to official immunity on plaintiff's claims against them in their official capacities.

**Qualified Immunity.**

Defendants may be shielded from liability for civil damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002);  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  Qualified immunity operates to ensure that before officials are subjected to suit, they are on notice that their conduct is unlawful.  <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001).  The qualified immunity determination involves a two-step analysis:  whether the official violated a clearly established constitutional right and, if so, whether the official's conduct was objectively reasonable.  <u>Martinez v. Texas Dep't of Criminal Justice</u>, 300 F.3d 567, 576 (5th Cir. 2002).  Qualified immunity protects officers from liability in their individual capacity only.  <u>Foley v. Univ. of Houston Sys.</u>, 324 F.3d 310, 314

n.6 (5th Cir. 2003).  The issue of qualified immunity is ordinarily one of law for the court to decide.  Hunter v. Bryant, 502 U.S. 224, 228 (1991).

> ### 1.   Excessive force.

To state a claim for excessive force, plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis,* but not necessarily significant.  See Hudson v. McMillian, 503 U.S. 1, 6, 10 (1992); Gomez v. Chandler, 163 F.3d 921, 923-24 (5th Cir. 1999); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).  The factors to be considered are (1) the extent of the injury suffered; (2)  the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5)  any effort made to temper the severity of a forceful response.  Gomez, 163 F.3d at 923.

> ### *Step 1 – Constitutional violation.*

Assuming the facts in the light most favorable to plaintiff, plaintiff has demonstrated that there is a genuine issue of material fact as to whether Deputy Escobedo and Deputy Garza used excessive force when they entered plaintiff's cell to stop him from breaking the phone or to otherwise subdue him.  Plaintiff claims that Deputy Garza shoved him to the floor and that Deputy Escobedo

repeatedly hit him in the head.   Pl's Depo., PE Ex. 29 at 47-48.
Defendants argue that force was applied to maintain security and
for their own safety.   Escobedo Aff't, DE Ex. I.   Plaintiff has
alleged a constitutional violation against these defendants.

Plaintiff has failed to establish a fact issue regarding his
claims against Officer Gomez, Officer Casares, or Lieutenant
Hinojosa concerning excessive force.   The uncontested facts
establish that Officer Gomez' and Officer Casares' participation in
the use of force was limited to placing leg irons on plaintiff once
he was subdued and on the ground.   DE Ex. I (Gomez' Aff't) and Ex.
K (Casares Aff't).   Plaintiff offers no evidence to refute their
testimony.   As to Lieutenant Hinojosa, the facts show that he was
the supervisor on duty at the jail that evening.   DE Ex. H
(Hinojosa Aff't).   Lieutenant Hinojosa arrived at plaintiff's cell
*after* the use of force had been employed.   Id.   There is no
evidence to suggest that Lieutenant Hinojosa participated in the
force.   In fact, plaintiff testified that, other than Deputy Garza
throwing him against the floor and Deputy Escobedo punching his
head, none of the other *deputies* hit or otherwise assaulted him.
Pl's Depo., PE Ex. 29 at 47-48, 95.

As to Officer Gomez, Officer Casares, and Lieutenant Hinojosa,
plaintiff has failed to state a constitutional violation.
Accordingly, these defendants are entitled to immunity on
plaintiff's claims of excessive force, and their motion for summary

-9-

judgment on plaintiff's excessive force claims is granted.

### *Step 2: Objective reasonableness.*

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The central concept [of the test] is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights. Pelzer, 536 U.S. at 740. Even officers who interpret the law mistakenly but reasonably are entitled to immunity. See Anderson, 483 U.S. at 641.

Neither Deputy Escobedo nor Deputy Garza argue that any legal principle involved was not clearly established at the time of the use of force. Thus, whether their actions were objectively reasonable depend on whether these officers reasonably believed that plaintiff posed a threat of imminent danger. This is a question of fact, and the facts in this case are in dispute. Accordingly, the Court denies Deputy Escobedo's and Deputy Garza's motion for summary judgment seeking qualified immunity on plaintiff's excessive force claim against them.

2.    **Deliberate Indifference to serious medical needs**.

Plaintiff claims that Deputy Garza, Deputy Escobedo, Officer Gomez, Officer Casares, and Lieutenant Hinojosa were deliberately indifferent to his serious medical needs because they failed to provide him with necessary medical treatment upon his arrival at the jail and after the use of force.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. <u>Wilson v. Seiter</u>, 501 U.S. 294, 303.(1991); <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976); <u>Varnado v. Lynaugh</u>, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference encompasses more than mere negligence on the part of prison officials. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  It requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act.  <u>Farmer</u>, 511 U.S. at 837.  Furthermore, negligent medical care does not constitute a valid § 1983 claim. <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993). <u>See also</u> <u>Graves v. Hampton</u>, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim").  As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a

prisoner's constitutional rights.  <u>Youngberg v. Romeo</u>, 457 U.S. 307, 322-23 (1982).  Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered.  <u>See Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999); <u>Mendoza</u>, 989 F.2d at 195; <u>Varnado</u>, 920 F.2d at 321.  "Deliberate indifference is an extremely high standard to meet."  <u>Domino v. Texas Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001).

Upon his arrival at the jail, plaintiff was seen by an intake officer and it was noted that plaintiff had an injury to his left eye.  PE Ex. 2 at 1.  Plaintiff testified that he felt "dazed" when he arrived at the jail and that he might have had a bump on his head; however, there is no indication that his eye was bleeding at the time, and plaintiff admitted that he did not ask for medical attention.  Pl's Depo., PE Ex. 29 at 21, 37, 40.  Plaintiff told the intake nurse that he suffers from ADDH; however, he admitted that he did not tell anyone else that he had ADDH, nor did he communicate that his ADDH required special medical attention.  <u>Id.</u> at 39.  Plaintiff fails to establish that he was suffering from a serious medical need at the time he was brought to the jail, and as such, defendants could not have been deliberately indifferent to his serious medical needs at that time.

Plaintiff argues that he was denied proper medical care following the use of force in his cell.  However, the summary

judgment evidence establishes that, immediately following the use of force, plaintiff was seen by Nurse Cabrera in his cell and his restraints were checked.  Pl's Depo., PE Ex. 29 at 53.  Thirty-five minutes later he was taken to the infirmary and examined.  PE Ex. 6.  Plaintiff's blood pressure was high and he was administered medications.  Id. at 2.  He was given an ice pack for his eye.  Id. at 1.  Plaintiff continued to be monitored periodically for the remainder of his time at the jail.  Id. at 3-5.

Plaintiff claims that defendants were deliberately indifferent to his serious medical needs because he did not receive medical attention for forty-five minutes following the use of force.  However, delay alone does not suffice to establish deliberate indifference.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Moreover, plaintiff fails to identify any *additional harm* attributable to the delay: even his hospital records classify his injuries as "nonurgent."  PE Ex. 14 at 2.  Plaintiff fails to establish that he suffered from a serious medical need.  Further, even if he could establish a serious medical need, he fails to establish that any defendant was aware of the serious need and ignored that need.  The individual defendants are entitled to summary judgment in their favor on plaintiff's deliberate indifference to serious medical needs claims.

-13-

### 3.   Conspiracy.

Plaintiff claims that the individual defendants conspired to violate his constitutional rights while he was in the jail in violation of 28 U.S.C. § 1985.

It is well settled that "mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy." McAfee v. 5th Circuit Judges, 884 F.2d 221 (5th Cir. 1989).  Moreover, a conspiracy is not actionable in the absence of a an actual violation of § 1983. Pfannstiel v. City of Maron, 918 F.2d 1178, 1187 (5th Cir. 1990) abrogated on other grounds, Martin v. Thomas, 973 F.2d 449 (5th Cir. 1992).

As previously noted, plaintiff has failed to demonstrate that defendants were deliberately indifferent to his serious medical needs, and as such, his conspiracy claim founded on medical care must fail. Pfannstiel, *supra.*  As to his excessive force claims, although plaintiff has alleged sufficient facts to establish a genuine fact issue to preclude summary judgment in favor of Deputy Garza or Deputy Escobedo on these claims, he offers no facts from which a conspiracy could reasonably be inferred, and his conclusory allegations fail to support such a claim.   McAffe, *supra.* Moreover, Deputy Escobedo and Deputy Garza are both employees of the same entity, Nueces County, and are therefore incapable of conspiring with each other in violation of § 1985.   Hilliard v.

-14-

_Ferguson_, 30 F.3d 649, 653 (5th Cir. 1994). Defendants are granted summary judgment in their favor on plaintiff's conspiracy claims.

**4.    Americans with Disabilities Act claims.**

Plaintiff is suing defendants in their individual capacities alleging that their treatment of him at the jail violated the Americans with Disabilities Act.   This claim cannot succeed, however, because a government official cannot be sued in his or her individual capacity for a violation of the ADA.   42 U.S.C.A. § 12132.   The statute provides that:

> ... no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a _public entity_, or be subjected to discrimination _by any such entity_.

42 U.S.C.A. § 12132 (emphasis supplied).  The term "public entity" is defined as "any State or local government . . . [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government."   42 U.S.C.A. § 12131.   Thus the statute does not contemplate holding officers liable in their individual capacities.

Fifth Circuit case law dictates this same conclusion.   In _Lollar v. Baker_, 196 F.3d 603 (5th Cir. 1999), the Fifth Circuit interpreted the Rehabilitation Act, which contains similar language to the ADA.[4]   The _Lollar_ court concluded that the statutory

---

[4] The Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under

language prohibited a plaintiff from bringing a Rehabilitation Act claim against a government official in his individual capacity. Id. at 609.   Similarly, Lollar held that a plaintiff could not avoid that bar by suing the individual for an Rehabilitation Act violation under § 1983.   Id. at 609.

Although Lollar was decided under the Rehabilitation Act, it also forecloses any attempt to sue a government official individually under the ADA.   As is frequently noted in this circuit, the ADA and the Rehabilitation Act are essentially identical in scope.   See, e.g., Pace v. Bogalusa City School Bd., 403 F.3d 272, 287-88 (5th Cir. 2005); Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000); see also 42 U.S.C.A. § 12133 (stating that the "remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides").   "[B]ecause the rights and remedies under both statutes are the same, case law interpreting one statute can be applied to the other."   Pace, 403 F.3d at 287-88.   Thus, the reasoning of Lollar applies with equal force to the ADA and bars a plaintiff from suing a government official in his or her individual capacity.[5]   Defendants motion for summary judgment is therefore

_____

any program or activity receiving Federal financial assistance."   29 U.S.C. § 794.

   [5] Several other circuits have reached this same conclusion.  See, e.g., Holbrook v. City of Alpharetta, 112 F.3d 1522 (11th Cir. 1997); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010-11 (8th Cir. 1999) (en banc).

-16-

granted on this issue with respect to defendants Hinojosa, Garza, Escobedo, Gomez, and Casares in their individual capacities.[6]

###   5.   State law claims.

Plaintiff argues that defendants acts and omissions amount to violations under Texas tort law, including intentional infliction of emotional distress. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Texas Tort Claims Act). Defendants contend that they are entitled to official immunity from Plaintiff's state tort claims.

First, to the extent plaintiff claims that the individual defendants "violated" § 101.021, he fails to state a claim upon which relief can be granted. The Texas Supreme Court has held that §101.021:

> ... does not create new duties. It merely waives the common law doctrine of governmental immunity under circumstances where a private person similarly situated would be liable. As in any other tort case, a plaintiff relying on [this section] of the Act must prove the existence and violation of a legal duty owed him by the defendant.

---

[6] The case of Hall v. Thomas, 190 F.3d 693 (5th Cir. 1999), while providing some support for the proposition that officials can be held individually liable under the ADA, does not mandate a contrary result in this case. In Hall, the Plaintiff sued numerous jail officials and doctors for violating the ADA. The district court dismissed all the ADA claims on three grounds: 1) that the ADA did not apply to jails; 2) that even if the ADA did apply to jails, the plaintiff still had not stated a claim under the ADA; and 3) defendants were entitled to qualified immunity. After an intervening Supreme Court decision held that the ADA did apply to institutions such as jails, the plaintiff appealed. The Fifth Circuit acknowledged that the intervening Supreme Court decision had invalidated the district court's first grounds for dismissal, but held that plaintiff still had "not stated a claim under the ADA" because he did not allege that any defendant's conduct "discriminated against him because of his disability." Id. at 696. In dicta, the court added that "even if" plaintiff had stated a claim under the ADA, the defendants would still be entitled to qualified immunity. Id.

City of Denton v. Page, 701 S.W.2d 831, 834 (Tex. 1986).  Thus, §
101.021 does not provide a basis for suit.

　　　To state a claim for intentional infliction of emotional
distress, a plaintiff must prove: (1) the defendant acted
intentionally or recklessly, (2) the conduct was extreme and
outrageous, (3) the defendant's actions caused the plaintiff
emotional distress, and (4) the emotional distress suffered by the
plaintiff was severe." Mattix-Hill v. Reck, 923 S.W.2d 596, 597
(Tex. 1996) (citing  Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex.
1993).  Outrageous conduct should be found "only where the conduct
has been so outrageous in character, and so extreme in degree, as
to go beyond all possible bounds of decency, and to be regarded as
atrocious, and utterly intolerable in a civilized community."
Twyman, 855 S.W.2d at 621.  In analyzing whether certain conduct is
extreme and outrageous, "courts consider the context and the
relationship between the parties." GTE Southwest, Inc. v. Bruce,
998 S.W.2d 605, 612 (Tex. 1999).  "The extreme and outrageous
character of the conduct may arise from an abuse by the actor of a
position, or a relation with the other, which gives him actual or
apparent authority over the other, or power to affect his
interests." Id. (quoting Restatement (Second) of Torts § 46 cmt.
(e)).  The fact that "an action is intentional, malicious, or even
criminal does not, standing alone, mean that it is extreme or
outrageous for purposes of intentional infliction of emotional

distress."   Brewerton v. Dalrymple, 997 S.W.2d 212, 215 (Tex. 1999).

Plaintiff offers no evidence to suggest that Officer Gomez, Officer Casares, or Lieutenant Hinojosa engaged in *any* conduct that a reasonable officer would have known to be inconsistent with plaintiff's rights.   The fact that these defendants may have applied leg irons to plaintiff in a way that left "marks" on his ankles does not constitute "extreme and outrageous" conduct for purposes of stating a claim or intentional infliction of emotional distress.   Further, the fact that these defendants left plaintiff in his cell for a half hour to "cool off" before administering medical attention does not demonstrate conduct that would shock the conscious.   A reasonable officer could rightly believe that such conduct was consistent with plaintiff's rights.   Therefore, defendants Hinojosa, Gomez, and Casares are entitled to official immunity and their motion for summary judgment on plaintiff's state law tort claim is granted.

Deputy Escobedo and Deputy Garza also seek immunity on plaintiff's state law tort claims.

The Texas Supreme Court has expressed reservations in finding a single or isolated instance of malicious conduct sufficient to meet the extreme and outrageous standard:

> Occasional malicious and abusive incidents should not be condoned, but must often be tolerated in our society. But once conduct . . . becomes a regular pattern of behavior and continues despite the victim's objection and

> attempts to remedy the situation, it can no longer be
> tolerated.  It is the severity and regularity of . . .
> abusive and threatening conduct that brings [it] into the
> realm of extreme and outrageous conduct.  Conduct such as
> being regularly assaulted, intimidated, and threatened
> . . . [should not] be accepted in a civilized society.

GTE Southwest, 998 S.W.2d at 617.   However, excessive police

conduct in and of itself can meet the standard of extreme and

outrageous conduct.  See, e.g., Kersh v. Derozier, 851 F.2d 1509,

1514 (5th Cir. 1988) (upholding a finding of extreme and outrageous

conduct where there was evidence that police engaged in a false and

pretextual arrest of plaintiff motivated by vindictiveness);

Hutchison v. Brookshire Bros., Ltd., 205 F.Supp.2d 629, 642 (E.D.

Tex. 2002) (a jury could find extreme and outrageous conduct where

police officer threatened plaintiff with arrest if he did not

siphon ten gallons of gasoline from his car).

Here, plaintiff claims that Deputy Garza threw him face-first

into the concrete floor and that Deputy Escobedo punched him

several times in the head, despite the fact that he was not

resisting the officers when the use of force was employed. Pl's

Depo., PE Ex. 29 at 47.  Given plaintiff's allegation as true, a

a reasonable officer would know this conduct was extreme and

outrageous. Therefore, Deputy Garza and Deputy Escobedo are not

entitled to immunity on plaintiff's claim of intentional infliction

of emotional distress, and their motions for summary judgment on

those claims are denied.

C.   **Claims against Nueces County, Sheriff Olivarez and Lieutenant Hinojosa (in his official capacity).**

Plaintiff has sued Nueces County, Sheriff Larry Olivarez, and Lieutenant Hinojosa arguing that these defendants are liable for the constitutional violations of the deputies and officers because the County failed to properly supervise and train its officers or had in place an unconstitutional law or policy. Plaintiff also asserts claims of negligence against the County.

1.   **Section 1983 claims.**

To state a cause of action under § 1983, plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged. Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995); Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). In addition, a supervisory official may not be held liable under § 1983 based on a theory of *respondeat superior* or vicarious liability. Reimer v. Smith, 663 F.2d 1316, 1323 (5th Cir. 1981). A supervisory defendant must be either personally involved in the incidents underlying the claim "or there must be a causal connection between an act of the [supervisor] and the constitutional violation sought to be redressed." Harvey v. Andrist, 754 F.2d 569, 572 (5th Cir. 1985) (citations omitted); also see Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir. 1986) (usually a failure to supervise imposes § 1983 liability only where there is a history of widespread deprivations).

-21-

Plaintiff claims that Lieutenant Hinojosa is liable for plaintiff's alleged injuries because he was the supervisor on duty at the time the use of force was employed. Thus, plaintiff is attempting to hold Lieutenant Hinojosa liable for the acts of his subordinates. This allegation fails to state a claim, and Lieutenant Hinojosa is entitled to summary judgment in his favor.

Plaintiff is suing Sheriff Larry Olivarez in his official capacity only. See D.E. 65 at 28. Suits against government officials in their official capacity are treated as suits against the governmental unit. See, e.g., Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Accordingly, plaintiff's claims against Sheriff Olivarez are claims against Nueces County.

Plaintiff alleges that the County is liable for the constitutional violations of the Deputies because the County engages in a pattern of similar constitutional violations and failed to properly supervise and train the officers involved. For a municipality to be liable under § 1983, there must be: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir.), cert. denied, 534 U.S. 820 (2001). These three elements are necessary to distinguish individual violations perpetrated by local government

employees from those that can be fairly identified as actions of the government itself.  <u>Id.</u>   Consequently, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability."  <u>Piotrowski</u>, 237 F.3d at 578.  An "official policy" may be either a written policy or "a persistent widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  <u>Lawson v. Dallas County</u>, 286 F.3d 257, 263 (5th Cir. 2002) (quoting <u>Webster v. City of Houston</u>, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).  There must be a link between the policy and the constitutional violation, and the policy must be maintained with an objective deliberate indifference to a constitutionally protected right.  <u>Id.</u>

Plaintiff claims that the County's policies resulted in deliberate indifference to his serious medical needs.  As discussed *supra*, plaintiff failed to establish that any individual defendants acting pursuant to a County policy or plan were deliberately indifferent to his serious medical needs. Without the underlying constitutional violation, the County cannot be held liable for being the "moving force" behind that violation.  <u>See</u> <u>Howard v. Grace</u>, 82 f.3d 1343, 1352 (6th Cir. 1996) (plaintiff must establish

an underlying Eighth Amendment violation against a responsible official before municipal liability will attach). Therefore, the County's motion for summary judgment on this claim is granted.

As to plaintiff's claims of excessive force, the County may be held liable for Officer Garza and Officer Escobedo's alleged excessive force if plaintiff can establish that an official county policy was the motivating force behind the violation. Plaintiff has stated that he "anticipates that further discovery will reveal a pattern of excessive force and injuries caused to inmates and detainees at the Nueces County Jail." Pl.'s Resp., D.E. 65 at 28. The Court finds that Plaintiff is entitled to further discovery on this issue. According, the County's motion for summary judgment on plaintiff's claim of excessive force is denied.[7]

**2.   State law claims.**

Although a county usually enjoys no immunity with respect to federal claims, under state law a "county is a governmental unit protected by the doctrine of sovereign immunity." Travis County v. Pelzel & Associates, Inc., 77 S.W.3d 246, 248 (Tex. 2002); see also Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). Absent legislative consent or a waiver of immunity, a county and its officials are protected from suit. See, e.g., Texas Dept. of Parks and Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004). The Texas Tort Claims

---

[7] Plaintiff also filed a claim against the county for violation of the ADA. The County did not seek summary judgment on that claim. Therefore, Plaintiff's ADA claim against the county is not affected by this order.

-24-

Act provides such a waiver. <u>See</u> Tex. Civ. Prac. & Rem. Code § 101.025 (stating that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by this chapter"). The waiver of immunity is not absolute, rather the Act waives sovereign immunity "only in certain circumstances." <u>University of Texas Medical Branch at Galveston v. York</u>, 871 S.W.2d 175, 177 (Tex. 1994) (stating also that the "Tort Claims Act did not abolish the doctrine of sovereign immunity"). In particular, the Act waives immunity for:

> personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code § 101.021.

The Act *does not*, however, waive immunity with respect to claims "*arising out of* assault, battery, false imprisonment, or any other intentional tort." <u>Id</u>. § 101.021 and 101.057 (emphasis supplied). Even where a plaintiff labels his claim "negligence," the claim will still be barred if the label is merely a fiction or if the negligence claim "arises out of" an intentional tort. <u>See</u>, <u>e.g.</u>, <u>Little v. Schafer</u>, 319 F. Supp. 190, 192 (S.D. Tex. 1970); <u>Huong v. City of Port Arthur</u>, 961 F. Supp. 1003, 1008 (E.D. Tex. 1997); <u>City of San Antonio v. Dunn</u>, 796 S.W.2d 258, 261 (Tex. App.--San Antonio 1990). In <u>Dunn</u>, for example, a police officer falsely arrested Dunn and, in the process, applied handcuffs "so tightly that they caused discomfort and swelling to Dunn's wrist." <u>Dunn</u>,

-25-

796 S.W.2d at 261.  Dunn sued the city for, *inter alia*, negligence in the application of his handcuffs.  <u>Id</u>.  The court held the negligence claim was barred by sovereign immunity because "[a]ll of Dunn's damages arose out of the false arrest and the excessive force."  <u>Id</u>.  The court reasoned that, because "the claims arise out of the intentional tort, there has been no waiver of immunity." <u>Id</u>.

Plaintiff argues that his case fails within the Act's immunity waiver because he "alleges misuse of the hand cuffs and leg irons." Pl.'s Resp., D.E. 65 at 29.  He claims that "[m]erely because Nueces County characterizes the actions of its deputies as assault and battery . . . does not eliminate the potential that the fact finder will find the deputies negligently restrained [plaintiff] and misused the hand cuffs and leg irons." <u>Id.</u>  This argument is unpersuasive.  The essence of plaintiff's complaint against the deputies is that they used excessive force against him, which is defined as force used maliciously and sadistically for the very purpose of causing harm.  This is an intentional tort for which the County would be entitled to immunity under the Tort Claims Act. Moreover, even assuming that the handcuffs were negligently applied, such a claim clearly "arises out of" the deputies allegedly-intentional assault.  Just as in <u>Dunn</u>, all of plaintiff's damages arise out of the claimed instance of excessive force. Therefore, the County is entitled to immunity and defendants' motion for summary judgment on plaintiff's Tort Claims Act cause of action is granted.

## V.  <u>CONCLUSION</u>

For the reasons discussed above, Defendants' motions for summary judgment (D.E. 56, 58, and 60), are GRANTED IN PART, DENIED IN PART.

Summary judgment is GRANTED with respect to all claims against defendants Hinojosa, Gomez, and Cesares in their individual capacities.  Summary judgment is DENIED with respect to the excessive force claims and intentional infliction of emotional distress claims against defendants Garza and Escobedo, but is GRANTED with respect to all other claims against those defendants. Summary judgment is GRANTED with respect to plaintiff's § 1983 deliberate indifference to serious medical needs claims and state law tort claims against Nueces County and Sheriff Olivarez, but is DENIED with respect to the excessive force claim against those same defendants.

SIGNED and ENTERED this 9th day of November, 2005.

_Janis Graham Jack_

Janis Graham Jack
United States District Judge

-27-