IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ERIC A. GONZALES, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| vs. | § | C.A. NO. C-05-280 |
| | § | |
| CITY OF CORPUS CHRISTI, | § | |
| et al, | § | |
| | § | |
|    Defendants. | § | |

## ORDER GRANTING SUMMARY JUDGMENT *SUA SPONTE*

On this day the Court considered summary judgment *sua sponte* on Plaintiff's claims against Defendant Irma Cabrera. For the reasons stated below, the Court GRANTS summary judgment against Plaintiff on all of his remaining claims.

## I. JURISDICTION

The Court has federal question jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

## II. BACKGROUND

In this action, Plaintiff Eric Gonzales ("Plaintiff") claims that his constitutional rights were violated in a series of incidents that occurred on June 3, 2004, during his arrest and detention. With respect to Defendant Irma Cabrera in particular, Plaintiff claims that Defendant Cabrera was deliberately indifferent to his serious medical needs in violation of his rights under the Fourteenth Amendment. (Pl.'s Orig. Compl. ("POC") at ¶¶ 40-47.) Plaintiff also asserts a claim under the Americans with

Disabilities Act, 42 U.S.C. § 12101 et seq., and a claim for intentional infliction of emotional distress under Texas law. (POC at ¶¶ 53, 59.) The following facts are not in dispute:

On June 3, 2004, Plaintiff was at the HEB grocery store on 4444 Kostoryz Road, Corpus Christi, Texas, attempting to purchase some cigarettes. (Pl.'s Depo. ("PD") at 10-12.) After purchasing the cigarettes at a gas station outside the store, Plaintiff was accosted by two Corpus Christi Police Officers, Mark Morrow and M. Goce, who had responded to a report of a disturbance at the store. (PD at 15-18; Pl.'s Ex. ("PE") 1.) At some point during the encounter, the officers used force against Plaintiff and placed him in handcuffs. (PD at 18-22; PE 31; Morrow Ex.[1] ("ME") 2-4.) The officers arrested Plaintiff for resisting search and arrest and took him to the Nueces County Jail. (PE 1; ME 4; PD at 21-24.)

At the jail, the intake officer noted that Plaintiff suffered from Attention Deficit Disorder with Hyperactivity ("ADDH") and had an injury to his left eye. (PE 2.) Plaintiff also underwent a mental disability/suicide intake screening, but was not believed to be a suicide risk. (PE 3.) Plaintiff was then placed alone in a holding cell. (PD at 25.) Once in the cell, Plaintiff began kicking and hitting the cell door. (PD at 41-45; Jail Video ("JV")[2] at 3:29:24.) In addition, Plaintiff picked up the handset

---

[1] Attached to Docket Entry 68.

[2] Clip number IA040037-17.

to the telephone in his jail cell and began hitting it repeatedly against the body of the phone.  (PD at 44; JV at 3:30:40.)   In response to Plaintiff's actions, two jail officers, Deputies Garza and Escobedo, entered Plaintiff's cell, used force against him, and applied handcuffs and leg irons.  (PD at 49-53; JV at 3:30:50.) Defendant Irma Cabrera, the jail nurse, was then summoned to Plaintiff's cell to check his restraints, which she found to be acceptable.  (See PD at 53-55; JV at 3:32:10.)  Plaintiff was then left alone and restrained in his cell.  (JV at 3:39:30.)

After approximately 35 to 40 minutes, the Deputies entered Plaintiff's cell, removed his handcuffs, and took him to the jail infirmary to see Defendant Cabrera, who took his pulse and blood pressure, and inquired about his medical history.  (See JV[3] at 4:14:10-4:36:00; PE 6 at 1.)   Plaintiff's blood pressure was measured at 193/105 and Defendant Cabrera also noted several injuries to Plaintiff's face, including swollen eyes, broken teeth, and an abrasion to his nose.  (PE 6 at 1.)  Defendant Cabrera provided Plaintiff with an ice bag for his eyes and medication (Clonidine and Zestril) for his elevated blood pressure.  (PE 6 at 1-3.)  Defendant Cabrera also ordered medical personnel to continue to monitor Plaintiff's blood pressure.  (PE 6 at 2.)  At 6:50 P.M., Plaintiff's blood pressure was 199/97 and at 2:12 A.M. the next day, his blood pressure was 184/113.  (PE 6 at 4-5.)  Plaintiff was

---

[3]  Clip numbers: IA040037-7, IA040037-8, and IA040037-9.

released from jail in the early morning of June 4, 2004, and went to the hospital for further treatment.  (PD at 65; PE 13.)

On June 3, 2005, Plaintiff filed suit in this Court against numerous defendants, including Irma Cabrera.  (D.E. 1.)  On May 16, 2006, this Court entered an order notifying Plaintiff of its intent to consider summary judgment *sua sponte* on his claims against Defendant Cabrera.  (D.E. 167.)  On May 26, 2006, Plaintiff filed his controverting evidence with the Court.  (D.E. 175.)

## III.  DISCUSSION

### A.  *Sua Sponte* Summary Judgment

"District courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*" so long as they provide the party no less than 10 days to respond.  See, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 28 F.3d 1388, 1397 (5th Cir. 1994);  Mannesman Demag Corp. v. M/V CONCERT EXPRESS, 225 F.3d 587, 595 (5th Cir. 2000);  NL Indus., Inc. v. GHR Energy Corp., 940 F.2d 957, 965 (5th Cir. 1991).  On May 16, 2006, the Court gave the Plaintiff 13 days notice of its intent to consider summary judgment against him.  Therefore, *sua sponte* summary judgment is appropriate in this case.

### B.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

-4-

affidavits, if any, show that there is no genuine issue as to any material fact."   The substantive law identifies which facts are material.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).   A dispute about a fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Anderson, 477 U.S. at 248; Judwin Props., Inc. v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The party subject to summary judgment, in this case the Plaintiff, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."   First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that the party must "produce affirmative and specific facts" demonstrating a genuine issue of fact).   The plaintiff's burden is not satisfied by conclusory allegations, unsubstantiated assertions, or some metaphysical doubt as to the material facts. Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").   Similarly, the "mere existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably

find for [the plaintiff]." <u>Doe on Behalf of Doe v. Dallas Indep.</u>
<u>Sch. Dist.</u>, 153 F.3d 211, 215 (5th Cir. 1998).

In considering summary judgment, the court must believe the
plaintiff's evidence "and all justifiable inferences are to be
drawn in his favor." <u>Willis</u>, 61 F.3d at 315. Summary judgment is
not appropriate unless, viewing the evidence in the light most
favorable to the plaintiff, no reasonable jury could return a
verdict for him. <u>See</u>, <u>e.g.</u>, <u>Rubinstein v. Adm'rs of the Tulane</u>
<u>Educ. Fund</u>, 218 F.3d 392, 399 (5th Cir. 2000). "That [one party]
appears more likely to prevail at trial is no reason to grant
summary judgment; it is not the province of the court on a motion
for summary judgment to weigh the evidence, assess its probative
value, or decide factual issues." <u>Byrd v. Roadway Exp., Inc.</u>, 687
F.2d 85, 87 (5th Cir. 1982). If, however, the "evidence is merely
colorable, or is not sufficiently probative, summary judgment may
be granted." <u>Anderson</u>, 477 U.S. at 249-50.

**C.   § 1983: Deliberate Indifference Claim**

Plaintiff claims that Defendant Cabrera violated his
Fourteenth Amendment right to adequate medical care. In order to
hold a jail official liable for denial of medical treatment, a
plaintiff must show that the defendant "had subjective knowledge of
a substantial risk of serious harm to [the plaintiff] but responded
with deliberate indifference to that risk." <u>Hare v. City of</u>
<u>Corinth</u>, 74 F.3d 633, 639 (5th Cir. 1996); <u>Estelle v. Gamble</u>, 429

U.S. 97, 105 (1976).  "Deliberate indifference is an extremely high standard to meet" and encompasses only "unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  See, e.g., Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001); McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997).  An "official's failure to alleviate a significant risk that [she] should have perceived but did not" cannot be the basis for liability.  Hare, 74 F.3d at 648.  It is also well-settled that negligent medical care does not constitute a valid § 1983 claim. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993).  Active treatment of a plaintiff's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered.  See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).  A plaintiff's constitutional rights are violated only if "jail officials were actually aware of the risk, yet consciously disregarded it."  Lawson v. Dallas County, 286 F.3d 257, 262 (5th Cir. 2002).

In this case, Plaintiff has no evidence that Defendant Cabrera consciously disregarded a substantial risk of serious harm to Plaintiff.  Rather, the undisputed evidence shows that, immediately following the use of force, Plaintiff was seen by Nurse Cabrera in his cell and his restraints were checked.  (PD at 53; JV at 3:32:10.)  Approximately forty minutes later, Defendant Cabrera

examined Plaintiff at the jail infirmary.  (PE 6 at 1.)  Defendant
Cabrera took Plaintiff's vital signs, inquired about his medical
history, and provided Plaintiff with an ice pack for his swollen
eyes and medications for his high blood pressure.  (PE 6 at 1-3.)
Plaintiff's blood pressure was monitored periodically for the
remainder of his time at the jail.  (PE 6 at 3-5.)  Thus, the
undisputed evidence shows that Defendant Cabrera actually examined
and treated Plaintiff's injuries.  Stewart v. Murphy, 174 F.3d 530,
537 (5th Cir. 1999) (no deliberate indifference where the "doctors
actively treated" a prisoner's serious condition).  Plaintiff has
no evidence that Defendant Cabrera "consciously disregarded" his
condition.  Cf. Lawson v. Dallas County, 286 F.3d 257, 262 (5th
Cir. 2002) (nurses disregarded the risk posed by plaintiff's ulcers
where they failed to follow doctors' instructions to change his
dressings regularly, turn him every couple of hours, provide him
with a foam mattress, and conduct hydrotherapy); Zentmyer v.
Kendall County, 220 F.3d 805, 812 (7th Cir. 2000) (stating, for
example, that "[i]f a defendant consciously chose to disregard a
nurse or doctor's directions in the face of medical risks, then he
may well have exhibited the necessary deliberate indifference").

Plaintiff argues that Defendant Cabrera was deliberately
indifferent to his serious medical needs in two ways.  First,
Plaintiff contends that "[w]hen nurse Cabrera came into the holding
cell and saw that [Plaintiff] had been injured, she should have
immediately offered [him] medical treatment" instead of waiting 40

-8-

minutes to give him a thorough examination.   (PE 94 at 5; Pl.'s Resp.[4] at 17.)   Mere delay in providing treatment, however, is not alone enough to find a constitutional violation. <u>See</u>, <u>e.g.</u>, <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990).   Furthermore, even if Defendant Cabrera did intentionally delay Plaintiff's medical treatment, there is no evidence that the delay resulted in any harm to Plaintiff. <u>Mendoza</u>, 989 F.2d at 195 (stating that "delay in medical care can only [support a § 1983 claim] if there has been deliberate indifference, which results in substantial harm"); <u>O'Bryant v. Culpepper</u>, 214 F.3d 1350 (5th Cir. 2000) (five-day delay in medical treatment did not support § 1983 claim where plaintiff had no evidence "that the delay in treating his injury caused substantial harm").

Second, Plaintiff also complains that Defendant Cabrera "should have just sent [him] to the hospital [because] everything would have been a lot better" or, alternatively, called for a physician or dentist to treat him.   (<u>See</u>, <u>e.g.</u>, PD at 67-8; PE 95 at 5; Pl.'s Resp. at 17.)   A plaintiff's complaint that a defendant should have provided him with a particular kind of treatment, however, does not state a claim for violation of the constitution. <u>See</u>, <u>e.g.</u>, <u>Gibbs v. Grimmette</u>, 254 F.3d 545, 549 (5th Cir. 2001) ("Disagreement with medical treatment alone cannot support a claim under § 1983"); <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir.

---

[4] Docket Entry 175.

1996) (a plaintiff's "showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another was insufficient, as a matter of law, to establish deliberate indifference"); <u>Miranda v. Munoz</u>, 770 F.2d 255, 259 (1st Cir. 1985) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"); <u>Jenkins v. Lee</u>, 84 F. App'x 469, 470 (5th Cir. 2004) (unpublished) (a plaintiff's "mere disagreement" with the manner in which prison officials treated his blood pressure was insufficient); <u>Higgins v. Correctional Medical Services of Illinois, Inc.</u>, 178 F.3d 508, 513 (7th Cir. 1999) (a claim that a defendant "was deliberately indifferent for not doing exactly what [the plaintiff] wanted--that is, to send him to a hospital" was not sufficient to survive summary judgment).   Similarly, a plaintiff cannot establish deliberate indifference by presenting evidence that the care he received was negligent or even "grossly negligent." <u>Thompson v. Upshur County</u>, 245 F.3d 447, 459 (5th Cir. 2001).   Rather, Plaintiff must show that Defendant Cabrera "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." <u>United States v. Gonzales</u>, 436 F.3d 560, 575 (5th Cir. 2006).   Plaintiff has no evidence of such conduct on the part Defendant Cabrera.   Therefore,

-10-

summary judgment is GRANTED against Plaintiff on his § 1983 claim.

### D.    § 1983: Conspiracy Claim

Plaintiff also claims that Defendant Cabrera is liable for participating in a conspiracy to deny him adequate medical care. A conspiracy claim, however, "is not actionable without an actual violation" of Plaintiff's constitutional rights.  Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995).   As noted above, however, Plaintiff has no evidence that his constitutional right to medical care was violated.  Therefore, summary judgment is GRANTED against Plaintiff on his § 1983 conspiracy claim.

### E.    Americans with Disabilities Act

Plaintiff claims that Defendant Cabrera is liable for violating the Americans with Disabilities Act ("ADA").  (POC at ¶ 53.)  This claim cannot succeed, however, because Defendant Cabrera cannot be sued in her *individual* capacity for a violation of the ADA.  See 42 U.S.C. § 12132.  The ADA provides that:

> . . . no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*, or be subjected to discrimination *by any such entity*.

Id. (emphasis supplied).  The term "public entity" is defined as "any State or local government . . . [or any] instrumentality of a State or States or local government."  42 U.S.C. § 12131(1)(A)-(C). Thus the statute, by its own terms, applies only to *public entities* and does not contemplate holding government employees liable in

-11-

their individual capacities.

Fifth Circuit case law dictates this same conclusion.   In Lollar v. Baker, 196 F.3d 603 (5th Cir. 1999), the Fifth Circuit interpreted the Rehabilitation Act, which contains similar language to the ADA.[5]   The Lollar court concluded that the statutory language prohibited a plaintiff from bringing a Rehabilitation Act claim against a government official in her individual capacity. Id. at 609.   Similarly, Lollar held that a plaintiff could not circumvent that bar by suing the individual for an Rehabilitation Act violation under § 1983.   Id. at 609.   Although Lollar was decided under the Rehabilitation Act, it also forecloses any attempt to sue a government official individually under the ADA. As is frequently noted in this Circuit, the ADA and the Rehabilitation Act are essentially identical in scope.   See, e.g., Pace v. Bogalusa City School Bd., 403 F.3d 272, 287-88 (5th Cir. 2005); Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000); see also 42 U.S.C.A. § 12133 (stating that the "remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights" under the ADA).   "[B]ecause the rights and remedies under both statutes are the same, case law interpreting one statute can be applied to the other." Pace, 403

---

[5] The Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794.

F.3d at 287-88.   Thus, the reasoning of <u>Lollar</u> bars a plaintiff from suing a government official in her individual capacity for violating the ADA.[6]  <u>See</u>, <u>e.g.</u>, <u>Id</u>.; <u>Sims v. Tester</u>, 2001 WL 627600 at *1 (N.D. Tex 2001) (unpublished) (no individual liability under the ADA); <u>Berthelot v. Stadler</u>, 2000 WL 1568224 at *2 (E.D. La. 2000) (unpublished) (same); <u>Bostick v. Elders</u>, 2003 WL 1193028 at *1 (N.D. Tex. 2003) (unpublished) (same).

In this case Plaintiff only has a claim against Defendant Cabrera in her individual capacity.   A suit against a County official in her official capacity is just "another way of pleading an action against [the County]."  <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991).  All claims against Nueces County in this case, however, were dismissed pursuant to the parties' settlement agreement. (D.E. 165, 179.)  Plaintiff's remaining claims, therefore, are only against Defendant Cabrera in her individual capacity.  Because the ADA does not allow individual liability of government officers, summary judgment is GRANTED against Plaintiff on this claim.

## F.   Intentional Infliction of Emotional Distress

Finally, Plaintiff claims that Defendant Cabrera is liable for intentional infliction of emotional distress under Texas law.  To hold a defendant liable for intentional infliction of emotional distress, a plaintiff must prove: "(1) the defendant acted

---

[6] Several other circuits have reached this same conclusion. <u>See</u>, <u>e.g.</u>, <u>Holbrook v. City of Alpharetta</u>, 112 F.3d 1522 (11th Cir. 1997); <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1010-11 (8th Cir. 1999) (en banc).

intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe." <u>Mattix-Hill v. Reck</u>, 923 S.W.2d 596, 597 (Tex. 1996) (citing <u>Twyman v. Twyman</u>, 855 S.W.2d 619, 621 (Tex. 1993)). Outrageous conduct should be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Twyman</u>, 855 S.W.2d at 621. The fact that "an action is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress." <u>Brewerton v. Dalrymple</u>, 997 S.W.2d 212, 215 (Tex. 1999). Similarly, "[r]ude behavior does not equate to outrageousness, and behavior is not outrageous simply because it may be tortious." <u>Natividad v. Alexsis, Inc.</u>, 875 S.W.2d 695, 699 (Tex. 1994).

In this case, Plaintiff has no evidence to support an intentional infliction of emotional distress claim against Defendant Cabrera. First, Plaintiff has no evidence that Defendant Cabrera acted in an extreme and outrageous manner toward him. As noted above, Defendant Cabrera examined Plaintiff and provided him with an ice pack and blood-pressure medication. (PE 6 at 1-5.) The mere fact that Defendant Cabrera did not immediately treat Plaintiff after his struggle with the Deputies and did not send him

-14-

to the hospital is not enough to sustain a claim for intentional infliction of emotional distress.  <u>See</u>, <u>e.g.</u>, <u>C.M. v. Tomball Regional Hosp.</u>, 961 S.W.2d 236, 245 (Tex. App.--Houston 1997) (evidence that a nurse did her job "badly" and "was rude, insensitive, and uncaring . . . did not rise to the level of intentional infliction of emotional distress"); <u>Brown v. Shaffer</u>, 942 S.W.2d 162, 166 (Tex. App.--Texarkana 1997) (stating that "cancellation of nonemergency surgery does not constitute extreme and outrageous conduct").  Second, Plaintiff has no evidence that he suffered *any* emotional distress as a result of Defendant Cabrera's conduct.  A plaintiff can only survive summary judgment if he has some evidence that he actually suffered emotional distress "so severe that no reasonable person should be expected to endure it."  <u>See</u>, <u>e.g.</u>, <u>Toles v. Toles</u>, 45 S.W.3d 252, 263 (Tex. App.--Dallas 2001).  Therefore, Plaintiff cannot hold Defendant Cabrera liable for intentional infliction of emotional distress, and summary judgment against Plaintiff is GRANTED on that claim.

## IV.  CONCLUSION

For the reasons discussed above, summary judgment is GRANTED against Plaintiff on all of his remaining claims.

SIGNED and ENTERED this 31th day of May, 2006.

_____
Janis Graham Jack
United States District Judge

-15-